IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Leon Waters,                         )
                                     )
                    Plaintiff,       )  Case No. 1:03-CV-272
                                     )
        vs.                          )
                                     )
Cincinnati Gas & Electric Company,   )
 *et al.*,                           )
                                     )
                    Defendants.      )

Memorandum and Order

For 19 years, ending in July 2002, Plaintiff was an employee of Cincinnati Gas & Electric Company ("CG&E"). He was a member of the International Brotherhood of Electrical Workers Local 1347 ("IBEW"). In July 2002, CG&E terminated Plaintiff's employment after an independent testing laboratory reported that he had failed a drug test. Plaintiff's claims against CG&E[1] and IBEW in this action arise from or relate to the termination of his employment and earlier employment-related events. This matter is before the Court upon motions for summary judgment by the IBEW (Doc. 60) and CG&E (Doc. 62), as well as Plaintiff's motion for an extension of time to file an expert's report (Doc.

---

[1]In his initial complaint in this matter, Plaintiff asserted claims against Cinergy Corporation, as well as CG&E. In the Amended Complaint filed on January 9, 2004, however, he eliminated Cinergy Corporation as a defendant. Accordingly, the Court considers Cinergy Corporation's motion for summary judgment (Doc. 62), which Cinergy Corporation filed jointly with CG&E, to be **MOOT**.

56) and CG&E's motion to strike and exclude the testimony of that expert (Doc. 57).

A. Background

Plaintiff Waters, an African-American man, failed a drug test in 1991, and CG&E suspended his employment at that time. CG&E advised Plaintiff upon his reinstatement that a second failed drug test would result in the termination of his employment.

Plaintiff alleges that he suffered various forms of racial harassment at the hands of coworkers and supervisors after he was transferred to CG&E's Brecon Heavy Equipment Facility in 1993. He does not allege, and has not offered evidence to show, that he filed a charge of discrimination or harassment with the Equal Employment Opportunity Commission ("EEOC") on the basis of those alleged incidents.

In July 1998, CG&E Promoted Plaintiff to Repair Mechanic A. By early 1999, Plaintiff was one of the three least senior of the 11 Repair Mechanic A's at the Brecon facility. In a corporate reorganization known as Transformation Now, CG&E intended to keep three Repair Mechanic A's at Brecon, to move five to Substation Maintenance, and to consider the three least senior as surplus employees. The surplus employees were to remain at Brecon, at no reduction in pay, pending assignment to

2

new positions.  Plaintiff's status remained unchanged from March to August 1999, at which time he accepted a demotion to Construction Helper.  The Construction Helper was in a lower classification, but Plaintiff and Charlie Young, a similarly situated Caucasian employee, enjoyed the same pay they had received as Repair Mechanic A's.

In September 1999, CG&E promoted one of the three Repair Mechanic A's who had remained in that position at the Brecon facility.  CG&E did not fill the position, and Plaintiff and Charlie Young complained to the IBEW, which initiated a grievance procedure pursuant to the collective bargaining agreement between IBEW and CG&E.  That grievance procedure did not result in CG&E filling the position in question.  To date, CG&E has declined to fill it.  Plaintiff has alleged and testified that his supervisor, Don Bricking, stated at an unidentified time that "things were better" for Plaintiff before he filed his grievance.

In July 2002, after Plaintiff asked for verification of employment to be submitted to a state court, CG&E investigated court files and learned that Plaintiff had been charged with a drug-related offense.  CG&E required Plaintiff to undergo a drug test at Bethesda Care, Sharonville.  The results of the test were positive, although Plaintiff claimed that testing protocols were not followed and the results of the test were unreliable.  CG&E

3

terminated his employment on July 23, 2002, nonetheless, for a second positive drug test. On July 29, 2002, Plaintiff pleaded guilty to drug possession and trafficking in Hamilton County Common Pleas Court.

Subsequently, Plaintiff initiated a grievance process through the IBEW with respect to the termination of his employment. He was initially unsuccessful, and the IBEW advised him that he would be required to gather certain evidence relating to the drug testing procedures in order to further pursue extrajudicial means of resolving his dispute with CG&E. Plaintiff claims that the IBEW miscommunicated to him the cost of retesting the urine sample upon which the termination of his employment had been based. The communications between Plaintiff and the IBEW about available remedies under the applicable collective bargaining agreement occurred after the December 20, 2002, denial of Plaintiff's grievance. Thereafter, Plaintiff became convinced that IBEW was no longer representing his interests and did not pursue remedies available under the collective bargaining agreement beyond his initial grievance.

In mid-November 2002, Plaintiff Waters filed a charge of discrimination with the EEOC. He named only Cinergy Corporation, which owns Defendant CG&E, as the party alleged to have discriminated against him. The particulars of his charge were as follows in full:

4

I.  I am African American.  I filed prior internal complaints of unlawful employment discrimination two years ago.  Subsequently, from prior to March 1, 2002 through July 27, 2002, my seniority was overlooked and I was denied better paying assignments in my department.  On July 27, 2002, I was discharged.

II.  Don Bricking (White, Heavy Equipment Supervisor) told me that a co-worker had more experience than I did with heavy equipment.  He also told me that I was terminated because I failed a drug test.

III.  I believe that I have been discriminated against because of my race and because of my opposition to employment practices made unlawful by Title VII of the Civil Rights Act of 1964, as amended.  A similarly situated junior White employee has been paid for performing higher classified assignments.  I don't know of other employees who have been required to take as many drug tests as me.  I did not abuse any illegal substances and I never failed prior drug tests which were administered to employees during the last ten years.

In the affidavit accompanying his charge of discrimination, Plaintiff averred, in full, as follows:

I am African American and I have made previous internal complaints of racial discrimination through my union, International Brotherhood of Electrical Workers, Local Union 1347.  I was classified as an "A" Mechanic until my demotion to Driver about two years ago.  Grievances were made two years ago and in January of 2002.  From prior to March 1, 2002, through July 27, 2002, my seniority was overlooked and at least one junior White co-worker in a lower pay grade was given assignments which I should have had because of my seniority.  I feel that I was retaliated against because of my prior grievances by being overlooked for the better jobs.  In private, Don Bricking (White, Supervisor of Heavy Equipment) told me that things were better for me before I filed grievances.  On July 27, 2002, I was discharged by Bricking who said that I failed a drug test.  I was told that I was tested at random, but I believe that I was tested for drugs about four times

5

during my last year with the company.  Normally, employees are subjected to two drug tests per year.  I feel that the testing was another form of retaliation against me for filing the racially based grievances.  I deny taking any illegal substances which would have caused me to fail the drug test.  I have never failed a drug test during the ten years the employees have been tested.

My comparison is to Kevin Dudley (White, Construction Helper).  He was in a lower job category than me and he was junior to me in seniority.  Bricking told me that Kevin was getting the Equipment Operator assignments because he used to own a farm and he operated heavy equipment in running the farm.  Kevin told me that he was getting the pay rate for higher position and this showed me that he was getting preferential treatment.  Bricking had me doing "A" mechanic assignments even though I was a Driver and I did not get the higher hourly pay rate during my last year with the company.  Bricking is in charge of between 24 to 32 employees of whom about five or six are African American.  I was the only African American who got the "A" Mechanic assignments.  The other African American employees reporting to Don are Equipment Operators.

I am filing this charge because I am seeking reinstatement with back wages and benefits.

On January 17, 2003, the EEOC notified Plaintiff of his right to sue.  He filed this lawsuit shortly thereafter.  He asserts the following claims:  discriminatory and retaliatory demotion from Repair Mechanic A to Groundsperson Driver A, racial harassment, disparate treatment with respect to pay and promotional opportunities, and discriminatory discharge, in violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.*, against

CG&E, and breach of the duty of fair representation against IBEW.[2]

Defendants have separately moved for summary judgment. Plaintiff has responded in two memoranda in opposition to those motions, and Defendants have filed their reply memoranda.

B.  The Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom.  United States v. Diebold, Inc., 369 U.S. 654 (1962).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

---

[2]In a scattershot response to Defendants' motions for summary judgment, Plaintiff makes numerous allegations that do not relate to any of the claims asserted in the amended complaint upon which those motions are based.  To the extent that those allegations are attempts to assert additional claims, they are improperly before the Court in the context of memoranda in opposition to motions for summary judgment.  Plaintiff has not sought leave to amend his complaint. The appropriate time for doing so has passed, and the Court will not consider any claims implied for the first time in the memoranda in opposition to Defendants' motions.

there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson v. Liberty</u> <u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original).

The Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson</u>, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  <u>Id.</u>

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment.  <u>Poller v. Columbia Broadcasting System, Inc.</u>, 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." <u>First National Bank</u> <u>v. Cities Service Co.</u>, 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, <u>Smith v. Hudson</u>, 600 F.2d 60, 63 (6th Cir.), <u>cert.</u>

dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.  Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in
Rule 56 that the moving party support its motion with affidavits
or similar materials negating the opponent's claim.  Id.  Rule
56(a) and (b) provide that parties may move for summary judgment
"with or without supporting affidavits."  Accordingly, where the
non-moving party will bear the burden of proof at trial on a
dispositive issue, summary judgment may be appropriate based
solely on the pleadings, depositions, answers to interrogatories,
and admissions on file.

C.  Analysis

1.  The Claim against the IBEW

Plaintiff claims that Defendant IBEW failed in its duty
to represent him in the grievance process.  In his amended
complaint, he does not specify the process upon which his claim
is based.  In opposition to the IBEW's motion for summary
judgment, he refers to the process initiated after his demotion
from Repair Mechanic A in 1999 and the process initiated after
the termination of his employment in 2002.  Defendant IBEW argues
that Plaintiff's claim against it is time-barred whether it
relates to the 1999 alleged demotion or the 2002 termination of
his employment.

Defendant IBEW contends, and Plaintiff does not
dispute, that the governing statute of limitations is that set

10

forth in 29 U.S.C. § 160(b), which provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge. . . ."  The United States Supreme Court has applied that statute to claims by workers against their representing unions for breach of the duty of fair representation.  See Del Costello v. International Brotherhood of Teamsters, 462 U.S. 151, 172 (1983).  The claim accrues "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation."  Adkins v. International Union of Electrical, Radio & Machine Workers, 769 F.2d 330, 335 (6th Cir. 1985).  Actual knowledge on the plaintiff's part is not determinative.  Rather, the focus is on when the plaintiff, in the exercise of reasonable diligence, should have known that the union would no longer act on a grievance or has otherwise taken its final action with respect to the matter giving rise to the grievance.  See Noble v. Chrysler Motors Corp., 32 F.3d 997, 1000 (6th Cir. 1994); Greenwood v. Delphi Automotive Systems, Inc., 257 F.Supp.2d 1047, 1069 (S.D. Ohio 2003).

     With respect to his 1999 alleged demotion, Plaintiff Waters has admitted that he knew before April 2002 that the issue was "dead."  See Plaintiff's deposition, p. 632.  He took no action to revive it.  See id. at 633.  Accordingly, to the extent that he contends that Defendant IBEW's failure to pursue the

11

matter further constituted a breach of its duty of fair representation, he was required, pursuant to 29 U.S.C. § 160(b) to assert a claim for the alleged breach no later than October 2002.

Plaintiff did not first assert a claim against the IBEW until January 9, 2004, when he filed his amended complaint in this matter.  His claim against the IBEW for breach of the duty of fair representation is, therefore, untimely to the extent that it relates to his 1999 alleged demotion.

The Court is equally persuaded that Plaintiff's claim for breach of the duty of fair representation is time-barred to the extent that it is based upon the termination of his employment in July 2002.  At his deposition in this matter, Plaintiff testified concerning communications between him and Defendant IBEW after the termination.  He stated that he was "through with" the union as of January 2003.  Plaintiff's deposition, p. 664.  Indeed, he testified that as of that date he "didn't care what they did with it."  Id.  He further testified that he believed in January 2003 that Defendant IBEW could do no more for him.  See id. at 665.

Based upon Plaintiff's own testimony, the Court concludes as a matter of law that he knew, or should have known, as of January 2003 that Defendant IBEW had taken its final action with respect to the termination of Plaintiff's employment.  He

12

has admitted that he asked no more from Defendant IBEW after that
date.  Accordingly, his cause of action for breach of the duty of
fair representation based upon the IBEW's actions with respect to
the termination of his employment accrued no later than January
2003.  In accordance with 29 U.S.C. § 160(b), the statutory
period expired no later than July 2003.  Plaintiff's claim, first
asserted in January 2004, is, therefore, untimely.  Defendant
IBEW is entitled to summary judgment on that basis.[3]

  2.  The Claims against CG&E

  Plaintiff's claims against Defendant CG&E are loosely
grouped under two headings, "WRONGFUL DEMOTION" and "DISPARATE
TREATMENT AND WRONGFUL TERMINATION."  As the Court interprets
Plaintiff's allegations, however, Plaintiff actually asserts five
claims against CG&E:  (1) discriminatory demotion from Repair
Mechanic A to Groundsperson Driver A in 1999; (2) racial
harassment/hostile work environment characterized by the
circulation of falsehoods about his use of drugs and unfair,
irregular evaluations; (3) disparate treatment in the form of
lower compensation and fewer promotion opportunities as compared
to similarly situated employees; (4) retaliation for filing a
grievance related to his alleged demotion in 1999; and (5)

---

[3]Plaintiff's argument that Defendant IBEW waived the statute of limitations
by failing to raise it in its answer to the amended complaint is based upon an
inaccurate reading of that answer in which the statute of limitations is clearly
asserted as an affirmative defense.

discriminatory discharge in 2002.  Defendant CG&E seeks summary judgment with respect to each of those claims.

      a.  Discriminatory demotion

      Plaintiff alleges that his demotion in 1999, which was part of the Transformation Now reorganization, was racially motivated.  Defendant CG&E contends that it is entitled to summary judgment with respect to that claim on two independent bases.

      First, it observes that the 1999 demotion was not a subject of a charge of discrimination filed by Plaintiff with the EEOC within 300 days of the action upon which the claim is based.  On that basis, Defendant contends that Plaintiff is barred from pursuing the claim in this action.

      Separately, Defendant contends that Plaintiff cannot demonstrate that race was a motivating factor in the alleged demotion or that he was treated less favorably than similarly situated employees who were not African-American.  Accordingly, CG&E contends that summary judgment is appropriate with respect to the discriminatory demotion claim, whether or not it is untimely.

      An action under a federal discrimination statute and based upon an alleged unlawful act that occurred more than 300 days before an EEOC charge based upon that act was filed is time-

barred. See, e.g., Janikowsi v. Bendix Corp., 823 F.2d 945, 947 (6th Cir. 1987). The 300-day period begins to run when the plaintiff receives notice of the adverse action, not when that action becomes effective or final. See Delaware State College v. Ricks, 449 U.S. 250, 260 (1980).

Plaintiff's EEOC charge, filed in November 2002, did not include an allegation that his 1999 demotion was racially-motivated. He has not adduced evidence of another charge filed with the EEOC in which he included such an allegation. Accordingly, he failed to satisfy the prerequisite to filing a claim under Title VII on the basis of the alleged demotion. Even had Plaintiff included allegations relating to the demotion in the 2002 EEOC charge, those allegations would have been untimely. The Court concludes, therefore, that Defendant CG&E is entitled to summary judgment with respect to Plaintiff's discriminatory discharge claim on the first basis asserted.[4]

Defendant CG&E is also entitled to summary judgment with respect to Plaintiff's discriminatory demotion claim on the second basis it asserts. Defendant contends that Plaintiff

---

[4]Plaintiff's attempt to rely upon the continuing violation theory to excuse his failure to file an EEOC charge is completely unavailing. That theory does not excuse the failure to assert a claim before the EEOC to the extent that the claim is based upon a separate actionable unlawful employment practice. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112-14 (2002). Plaintiff cannot seriously contend that his 1999 alleged demotion as part of a reorganization of a department is not separate from his 2002 discharge as a result of an allegedly failed drug test.

cannot establish a *prima facie* case of discrimination with respect to the alleged demotion.

Defendant first observes that a claim of discrimination in violation of Title VII may be based only upon a materially adverse employment action.  It contends that Plaintiff did not suffer a materially adverse employment action in 1999 because he retained the same compensation after the reorganization as he had enjoyed in the Repair Mechanic A position, even though his new assignment was in a lower job classification.

The United States Court of Appeals for the Sixth Circuit has held in the Title VII context that a demotion that is not characterized by a reduction in compensation, significantly diminished material responsibilities, or other similar indices is not a materially adverse employment action.  See Hollins v. Atlantic Co., Inc., 188 F.3d 652, 662 (6th Cir. 1999)(citing as adopted Crady v. Liberty National Bank & Trust Co. of Indiana, 993 F.2d 132, 136 (7th Cir. 1993)).  In other words, an employee must have suffered more than a change in title or classification in order to successfully assert a Title VII claim.  He must demonstrate that a tangible job detriment, akin to a reduction in compensation or significantly diminished responsibilities, accompanied the change.

Plaintiff has conceded that he did not suffer a reduction in compensation as a result of the alleged demotion in

16

1999.  He has argued that he suffered a tangible job detriment in the form of reduced eligibility for certain promotions, however. While the Court assumes that such a detriment may characterize a materially adverse employment action in some circumstances, it finds that Plaintiff has not introduced evidence that tends to show that he actually suffered the alleged detriment.  At page 13 of his memorandum in opposition to Defendant CG&E's motion for summary judgment, Plaintiff argues, without reference to any evidence, that "[h]is demotion kept him from acquiring 'promotable experience' and more importantly, preventing him from acquiring seniority in higher classifications commensurate with his talent and past experience with the company."  Such a bald assertion does not satisfy Plaintiff's burden in opposition to a well-supported motion for summary judgment to come forward with evidence in support of the essential elements of his claim.  The Court concludes that Plaintiff has failed to introduce evidence in support of the *prima facie* claim of discriminatory demotion and that Defendant CG&E is entitled to summary judgment on that additional basis.[5]


b.  Racial harassment/hostile work environment

---

[5]Plaintiff has also failed to identify evidence that tends to show that the articulated basis for the "demotion," which was his relative lack of seniority, was pretext.  Accordingly, Defendant CG&E is entitled to summary judgment on that third basis as well.  See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-56 (1981).

In his amended complaint in this matter, Plaintiff characterized his racial harassment claim as follows:

> 21. Plaintiff further alleges that on the basis of his African-American race, he has been subjected to disparate treatment and a hostile work environment characterized by circulating falsehoods about him regarding his use and misuse of drugs and causing trouble among the workers that led to unfair, irregular evaluations geared to causing Plaintiff's systematic failure in the work place.

Those allegations do not appear in Plaintiff's EEOC charge, and he has not identified evidence that tends to show that he ever asserted a charge of racial harassment before the EEOC. For that reason alone, Plaintiff ought to be precluded from asserting a racial harassment claim in this Court. See, e.g., Janikowsi, 823 F.2d at 947. Defendant CG&E does not seek summary judgment with respect to the claim on that basis, however.

Defendant's motion for summary judgment as it pertains to Plaintiff's racial harassment claim is based upon Plaintiff's failure to identify evidence that tends to show that Defendant was aware of any alleged acts of harassment or of a racially hostile environment and failed to take action to correct it. The elements of a *prima facie* claim of racial harassment under Title VII are as follows:

> (1) that the plaintiff is a member of a protected class;

18

(2)  that he was subjected to unwelcome
     harassment;

(3)  that the harassment was based on his race;

(4)  that the harassment had the effect of
     unreasonably interfering with his work
     performance by creating an intimidating, hostile,
     or offensive work environment; and

(5)  that employer liability exists.

See Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999).

Employer liability exists when the employer knew or should have

known of the harassing conduct but failed to take prompt and

appropriate corrective or preventive action.  See, e.g, Williams

v. General Motors Corp., 187 F.3d 553, 560-61 (6th Cir. 1999).

      Plaintiff has identified an array of incidents as

forming the basis for his racial harassment claim.  The most

shocking of those incidents are displays of nooses on the work

premises on various occasions between 1990 and 2002.  In response

to Defendant's contention that Plaintiff never reported having

seen a noose to anyone in authority at CG&E, however, Plaintiff

admitted that he did not report any of these incidents to his

supervisors.  See Plaintiff's deposition, pp. 417, 418, 420.

Accordingly, he cannot satisfy the final element of the *prima*

*facie* claim to the extent that his racial harassment claim is

based upon the presence of nooses in the workplace.

      Plaintiff has also identified evidence of a racially

offensive image on a bulletin board and of comments by a coworker

about Plaintiff dating a Caucasian woman.  He concedes, however, that CG&E's management acted to correct those issues as soon as it was made aware of them.  He does not argue that the corrective action was insufficient or insufficiently prompt.  Accordingly, again, he cannot establish the fifth element of the *prima facie* case.  See Williams, 187 F.3d at 560-561.

Plaintiff also argues that he was racially harassed by supervisor Bob Morgan.  He has identified evidence of only two incidents that included any racial content whatsoever.  One was a question by Morgan about whether all black people were as nosey as Plaintiff.  The other was unidentified racial jokes by Morgan.  Plaintiff has conceded that the jokes were not aimed at him and that he cannot remember the content of any of the jokes.  See Plaintiff's deposition, pp. 407-08.  The sum of the evidence identified by Plaintiff in support of his racial harassment claim based upon Bob Morgan's conduct, then, is unremembered racial jokes not aimed at Plaintiff and a question about the relative nosiness of African-Americans.

The conduct of which Plaintiff complains is inappropriate and offensive.  The Court is persuaded, however, that it does not rise to the level of severity required for the successful prosecution of a racial harassment claim.  The evidence does not suggest that the workplace was permeated with discriminatory intimidation, ridicule, or insult, of which CG&E

was aware, that is sufficiently severe or pervasive as to alter the working conditions and create an abusive environment . See Farmer v. Cleveland Public Power, 295 F.3d 593, 605 (6th Cir. 2002)(citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  The Court is persuaded that Plaintiff cannot establish a *prima facie* claim on the basis of that conduct and that, accordingly, Defendant CG&E would be entitled to summary judgment with respect to Plaintiff's racial harassment claim even had he timely asserted racial harassment before the EEOC.

c.  Disparate treatment

The allegations underlying Plaintiff's disparate treatment claim, as set forth in his amended complaint, are as follows:

> 23.  Plaintiff alleges that he has been subjected to employment practices based on disparate treatment, including, but not limited to, lower compensation for time employed by the Company, and failure to promote without justifiable cause.
>
> * * *
>
> 26.  Plaintiff was demoted by this [Transformation Now] change, but two other employees, co-workers, received a promotion.  However, two other co-workers, Tony Sinclair and Mike Dickman, were both promoted as a result of the Company phasing out the Repair Mechanic position.
>
> * * *
>
> 31.  Ralph Kroger [who is Caucasian] was charged with driving under the influence, but [Supervisor]

21

Bricking did not issue any disciplinary measure
against him.

32.  But Bricking and other supervisors drug
tested Plaintiff at random since October, 1991 as
part of the Department of Transportation
regulations and as part of his "probaton" [sic]
punishment.

* * *

35.  Plaintiff alleges that disciplinary steps
between January 2002 and July 27, 2002, were
unfairly administered because more severe
sanctions were applied to him because of his race,
African-American, than were imposed not [sic] on
his White-American counterparts, including, but
not limited to, unjustified demotion from Repair
Mechanic A and, with consequent decrease in salary
in December, 1999.

Of those allegations, only the lower pay and frequent

drug test allegations were included in Plaintiff's charge of

discrimination with the EEOC.  The other allegations, which

relate to the 1999 Transformation Now reorganization, are barred,

as bases for a claim under Title VII in this action in accordance

with this Court's analysis in part C.2.a of this Memorandum and

Order.

In order to establish a *prima facie* claim of disparate

treatment in the terms and conditions of employment, a plaintiff

must identify evidence that tends to show that his employer

treated him less favorably than similarly-situated non-protected

employees.  See Mitchell v. Toledo Hospital, 964 F.2d 577, 582

(6th Cir. 1992).  In order to do so, a plaintiff must identify

evidence that tends to show, <u>inter alia</u>, that he is similarly situated in all material respects to the employees to whom he compares himself.  <u>See Hollins</u>, 188 F.3d at 659.  The United States Court of Appeals for the Sixth Circuit has stated that in order to establish a *prima facie* case, a plaintiff must show that the employees to whom he compares himself were similarly-situated in all relevant respects.  <u>See Pierce v. Commonwealth Life Ins. Co.</u>, 40 F.3d 796, 802 (6th Cir. 1994).  <u>See also Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 352 (6th Cir. 1998). The burden of proof with respect to the issue of comparability rests upon Plaintiff, who must "produce sufficient affirmative evidence to establish that the . . . employees with whom []he compares [his] . . . treatment were 'similarly situated. . . .'" <u>Mitchell</u>, 964 F.2d at 583.  In support of its motion for summary judgment, Defendant CG&E argues that Plaintiff cannot identify a single similarly situated non-African-American employee whom CG&E treated more favorable with respect to compensation, promotions, or discipline.

In opposition to Defendant CG&E's motion for summary judgment, Plaintiff makes very minimal attempt to carry his burden of identifying a similarly situated non-African-American employee to whom his treatment at CG&E's hands compared unfavorably.  The Court finds reference, in that context, only to Ralph Kroger, whom, Plaintiff argues, Defendant promoted to

23

Equipment Operator in or about 2001 over Plaintiff.  Plaintiff elsewhere admits, however, that Kroger enjoyed seniority over Plaintiff.  The two were not, therefore, similarly situated.  In short, Plaintiff has not identified evidence upon which his claim of disparate treatment may be based.  Defendant CG&E is entitled to summary judgment with respect to that claim.

### d.  Retaliation

Plaintiff alleges that he suffered retaliation at the hands of Defendant CG&E for his grievance relating to the alleged demotion he suffered in 1999 as part of the Transformation Now reorganization.  He alleges, specifically, in his amended complaint that his supervisor, Don Bricking, told him that "things were 'better' for Plaintiff before he filed his grievance[]" and that his July 2002 drug test was motivated by retaliatory animus.

In order to establish a *prima facie* case of retaliation in violation of Title VII, Plaintiff must demonstrate the following:

> (1)  that he complained of discrimination or took some other action that is protected by the statute;

> (2)  that his employer knew of the complaint and thereafter took adverse action against him; and

(3)   that a causal relationship exists between the
      complaint and the adverse action.

See Canitia v. Yellow Freight System, 903 F.2d 1064, 1066 (6th

Cir.), cert. denied, 498 U.S. 984 (1990).  See also Fenton v.

HiSAN, Inc., 174 F.3d 827, 831 (6th Cir. 1999).  In order to

establish a causal connection, Plaintiff must introduce evidence

that would permit an inference that the adverse action would not

have occurred but for the protected activity.  See, e.g., Allen

v. Michigan Department of Corrections, 165 F.3d 405, 413 (6th

Cir. 1999).  Temporal proximity of the adverse action to the

protected activity may be relevant to the inquiry.  See Harrison

v. Metro Government, 80 F.3d 1107, 1119 (6th Cir.)(temporal

proximity, taken together with other evidence of retaliatory

motivation, is sufficient to establish prima facie case of

retaliation), cert. denied, 519 U.S. 863 (1996).  Temporal

proximity alone will not prove retaliation, however.  See Black

v. Columbus Public Schools, 124 F.Supp.2d 550, 572 (S.D. Ohio

2000), aff'd in part, vacated in part on other grounds, 79 Fed.

Appx. 735 (6th Cir. 2003).  Moreover, a significant lapse in time

between the protected activity and the alleged adverse employment

action may negate the inference that the two are causally linked.

See Strouss v. Michigan Department of Corrections, 250 F.3d 336,

344 (6th Cir. 2001).

25

Defendant CG&E concedes that Plaintiff can establish the first two elements of the *prima facie* case of retaliation on the basis of his internal complaints relating to the manner in which he was "demoted" in 1999.  Plaintiff filed a grievance in early 2000.  Accordingly, any adverse action must have occurred after January 2000 to have been causally linked to Plaintiff's protected activity.  Defendant argues that Plaintiff cannot establish the third element of the *prima facie* case because he cannot identify an adverse action that was causally linked to his protected activity.

In opposition to CG&E's motion for summary judgment, Plaintiff has not directly addressed Defendant's arguments with respect to his retaliation claim.  The only adverse action after January 2002 concerning which he has adduced evidence is the termination of his employment in July 2002.  He suggests that that termination was motivated by his January 2000 grievance but offers no evidentiary support for that suggestion other than his supervisor's statement in or about July 2001 that things were "better" for him before he filed the grievance.[6]  Both that comment and the July 2002 termination of his employment are too remote in time from the January 2000 grievance to permit any

---

[6]In an affidavit postdating his deposition, Plaintiff represents that his supervisor made the statement in April 2002.  He cannot, however, alter his deposition testimony by filing a later contradictory affidavit.  The affidavit is inadmissible to the extent that it deviates from his deposition testimony.  See Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986).

inference that a causal connection between the grievance and the termination exists.  The Court concludes, therefore, that Defendant CG&E is entitled to summary judgment with respect to Plaintiff's retaliation claim.

### e.  Discriminatory discharge

In his amended complaint, Plaintiff makes clear that his claim of discriminatory discharge is based upon his allegation that the drug test that led to the termination of his employment was racially motivated.  He alleges, specifically, that Defendant CG&E required him to undergo more frequent drug testing than other employees and that the sanction for the allegedly positive test result was more severe than that imposed upon other employees.  Plaintiff's claim, therefore, is that CG&E treated him less favorably than similarly situated non-African-American employees.

The Court has previously disposed of Plaintiff's disparate treatment claim.  His failure to identify a similarly situated non-African-American employee whom CG&E treated more favorably was fatal to that claim.  The Court's analysis applies equally to Plaintiff's claim of discriminatory discharge in violation of Title VII.

Plaintiff has not identified a similarly situated employee of any race who was arrested on drug charges.  The

unequivocal evidence is that his arrest prompted an investigation by CG&E and that that investigation resulted in the requirement that he undergo drug testing.  He has also failed to identify evidence that tends to show that another employee with one previous positive drug test failed a second drug test and was retained.  Having failed to identify another employee in similar circumstances, Plaintiff cannot establish a *prima facie* case that his discharge violated Title VII.  See Mitchell, 964 F.2d at 583.  Accordingly, Defendant CG&E is entitled to summary judgment with respect to Plaintiff's discriminatory discharge claim.

> f.  Breach of a collective bargaining agreement

The parties have included arguments in their memoranda in support of and in opposition to Defendant CG&E's motion for summary judgment with respect to an argument by Plaintiff that CG&E breached the applicable collective bargaining agreement in the manner in which the July 2002 drug testing was conducted. The Court has carefully read the amended complaint and finds no allegations in support of such a claim.  Plaintiff has set forth two numbered claims against Defendant CG&E.  In each of those claims, he refers to federal statutory law.  He makes no reference to a collective bargaining agreement or any other alleged contract between Plaintiff and CG&E except in alleging that he filed grievances in accordance with such an agreement.

In his lengthy prayer for damages, he fails to make reference to any alleged breach by Defendant CG&E. In short, in spite of the parties' arguments in their memoranda, the Court does not perceive that a breach of contract claim against Defendant CG&E was asserted in this action.

In any event, this Memorandum and Order disposes of all of Plaintiff's claims asserted under federal law. His breach of contract claim, were one to have been asserted, would have been a state law claim. Plaintiff has not asserted that complete diversity of citizenship exists for purposes of establishing this Court's subject matter jurisdiction. Moreover, he has affirmatively alleged that both he and Defendant CG&E are residents of the State of Ohio. Accordingly, this Court does not have independent jurisdiction over the subject matter of any breach of contract claim Plaintiff may have wished to assert against Defendant CG&E. For those reasons, the Court declines to retain jurisdiction over such a claim. To the extent that it has been asserted, and the Court concludes that it has not, the claim is hereby **DISMISSED** without prejudice. <u>See</u> 28 U.S.C. § 1367(c)(3).

D.  <u>Conclusion</u>

For the foregoing reasons, Defendant IBEW's motion for summary judgment (Doc. 60) is hereby **GRANTED** in its entirety. Defendant CG&E's motion for summary judgment (Doc. 62) is also

hereby **GRANTED,** except as it pertains to any claim for breach of contract Plaintiff may have intended to assert in this action. Such a claim is hereby **DISMISSED** without prejudice.  Plaintiff's motion for an extension of time to file a rebuttal report (Doc. 56) and Defendant's motion to preclude the testimony of Plaintiff's proposed rebuttal expert (Doc. 57) are **MOOT.**  This action is **CLOSED** on this Court's docket.

      **IT IS SO ORDERED.**

_____/s/_____
Sandra S. Beckwith, Chief Judge
United States District Court